HEATHER E. WILLIAMS, #122664
Federal Defender
CAROLYN M. WIGGIN, # 182732
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: 916-498-5700
Carolyn_Wiggin@fd.org

Attorney for Defendant-Movant
JAVARIS MARQUEZ TUBBS

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  2:05-cr-00243-WBS-CKD |
| | ) | |
| Plaintiff-Respondent, | ) | <u>FIRST AMENDED</u> MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. SECTION 2255 |
| vs. | ) | |
| | ) | |
| JAVARIS MARQUEZ TUBBS, | ) | |
| | ) | Judge: Hon. William B. Shubb |
| Defendant-Movant. | ) | |
| | ) | |
| _____ | ) | |

# Table of Contents

Table of Authorities ................................................................................................ ii

I.   Introduction ................................................................................................... 1

II.  Statement of Facts ......................................................................................... 1

III. Claim One: Mr. Tubbs' Conviction under 18 U.S.C. § 924(c) Must Be Vacated in Light of Johnson II ................................................................................... 3

   A.   *Johnson II* Renders the Residual Clause in the Definitions of "Crime of Violence" Found in 18 U.S.C. Section 924(c)(3) Void for Vagueness. ................................ 3

   B.   In Light of *Johnson II*, Federal Armed Bank Robbery Fails to Qualify as a Crime of Violence Under 18 U.S.C. Section 924(c)(3). ....................................... 6

     1. To Decide Whether an Offense is a "Crime of Violence," Under the Elements Clause, this Court Must Employ the Categorical Approach. ............................... 6

     2.   *Johnson II* Invalidated Prior Ninth Circuit Case Law. ................................. 7

     3.   Federal Bank Robbery Does Not Require Intentional Force. ....................... 11

     4.   Federal Bank Robbery Does Not Require Violent Force. ........................... 14

     5.   An Aider and Abettor Need Not Intend the Use of Violent Force. ............. 15

   C.   Mr. Tubbs' Claim is Cognizable under 28 U.S.C. Section 2255(a). ............. 17

   D.   *Johnson II* Applies Retroactively on Collateral Review ................................ 18

   E.   This Motion is Timely under 28 U.S.C. § 2255(f)(3). .................................... 19

IV.  Claim Two: Mr. Tubbs' Fifth Amendment Right to Due Process Was Violated by Prosecutorial Misconduct ................................................................. 20

V.   Claim Three: Mr. Tubbs' Attorney Failed to Provide Him With Accurate Advice Regarding His Waiver of Appeal Pursuant to a Plea Agreement in a Related Case. ........... 20

VI.  Conclusion ................................................................................................ 21

28 U.S.C. § 2242 CERTIFICATION ................................................................ 22

i

**Table of Authorities**

**United States Constitution**

Fifth Amendment to the United States Constitution ................................................................... 20

Sixth Amendment to the United States Constitution ................................................................... 20

**Federal Cases**

*Almanza-Arenas v. Lynch*, 815 F.3d 469 (9th Cir. 2016) (*en banc*) ..................................... 8, 9, 10

*Beckles v. United States*, 135 S. Ct. 2928 (2015) ................................................................ 19

*Brown v. United States*, No. 15-10025 (11th Cir. Sept. 2, 2015) ................................................ 18

*Danforth v. Minnesota*, 552 U.S. 264 (2008) ..................................................................... 19

*Davis v. United States*, 564 U.S. 229 (2011) ..................................................................... 19

*Denson v. United States*, 135 S. Ct. 2931 (2015) ................................................................ 19

*Descamps v. United States*, 133 S. Ct. 2276 (2013) ............................................................... 6

*Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015) ................................................................... 5

*Donnelly v. DeChristoforo*, 416 U.S. 637 (1974) ................................................................. 20

*Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (en banc) ............................... 7, 11, 15

*Garcia v. Wells Fargo Bank, N.A.*, 990 F. Supp. 2d 1028 (C.D. Cal. 2014) ................................ 9

*James v. United States*, 550 U.S. 192 (2007)............................................................ 3, 4, 15, 16

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ......................................................... *passim*

*Johnson v. United States*, 559 U.S. 133 (2010) ......................................................... 6, 8, 10, 11

*Jones v. United States*, 135 S. Ct. 2944 (2015)................................................................. 19

*Jones v. United States*, 136 S. Ct. 333 (2015)................................................................. 19

*Leocal v. Ashcroft*, 543 U.S. 1 (2004)..................................................................... 7, 11

*McMann v. Richardson*, 397 U.S. 759 (1970) ..................................................................... 21

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (*en banc*)....................................................... 8

*Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013) ......................................................... 6, 8, 9, 10

*Ortega-Mendez v. Gonzales*, 450 F.3d 1010 (9th Cir. 2006)........................................................ 9

*Ortiz-Magana v. Mukasey*, 542 F.3d 653 (9th Cir. 2008) ......................................................... 17

*Park v. United States*, No. 16-35283 (9th Cir. June 13, 2016) ...................................................... 11

*Reina-Rodriguez v. United States*, 655 F.3d 1182 (9th Cir. 2011) ............................................ 19

*Rodriguez-Castellon v. Holder*, 733 F.3d 847 (9th Cir. 2013) .............................................. 4, 5

*Rosemond v. United States*, 134 S. Ct. 1240 (2014) ....................................................... 15, 16, 17

*Schad v. Arizona*, 501 U.S. 624 (1991) ........................................................................ 9

*Sykes v. United States*, 131 S. Ct. 2267 (2011) ............................................................... 3

*United States v. Addonizio*, 442 U.S. 178 (1979) ........................................................... 18

*United States v. Amparo*, 68 F.3d 1222 (9th Cir. 1995) ................................................... 4

*United States v. Baires-Reyes*, 3:15-cr-00122-EMC-2 (N.D. Cal. June 7, 2016) ...................... 16

*United States v. Bell*, No. 15-CR-00258-WHO, 2016 WL 344749
  (N.D. Cal. Jan. 28, 2016) ......................................................................................... 5

*United States v. Dean*, 2016 WL 1060229 (D. Or. Mar. 15, 2016) ....................................... 19

*United States v. Dixon*, 805 F.3d 1193 (9th Cir. 2015) ........................................... *passim*

*United States v. Easter*, 66 F.3d 1018 (9th Cir. 1995) ..................................................... 15

*United States v. Foppe*, 993 F.2d 1444 (9th Cir. 1993) .............................................. 12, 14

*United States v. Grajeda*, 581 F.3d 1186 (9th Cir. 2009) ............................................ 9, 17

*United States v. Hopkins*, 703 F.2d 1102 (9th Cir. 1983) ........................................... 8, 14

*United States v. Ketchum*, 550 F.3d 363 (4th Cir. 2008) ........................................... 12, 14

*United States v. Lawrence*, 627 F.3d 1281 (9th Cir. 2010) ............................................. 10

*United States v. Luong*, No. 2:99-cr-00433-WBS (E.D. Cal. Apr. 20, 2016) ........................... 16

*United States v. Martinez-Jimenez*, 864 F.2d 664 (9th Cir. 1989) ............................... 13, 14

*United States v. McDougherty*, 920 F.2d 569 (9th Cir. 1990) .................................... 10, 11

*United States v. Melchor-Meceno*, 620 F.3d 1180 (9th Cir. 2010) ...................................... 14

*United States v. Parnell*, 818 F.3d 974 (9th Cir. 2016) ................................... 6, 9, 14, 16

*United States v. Ramos–Medina*, 706 F.3d 932 (9th Cir. 2013) ........................................... 5

*United States v. Selfa*, 918 F.2d 749 (9th Cir. 1990) ........................................... *passim*

*United States v. Smith*, No. 2:11-cr-00058-JAD-CWH, 2016 WL 2901661
  (D. Nev. May 18, 2016) ............................................................................................ 16

*United States v. Thongsouk Theng Lattanaphom*, No. CR 2:99-00433 WBS,
  2016 WL 393545 (E.D. Cal. Feb. 2, 2016) ............................................................... 5

iii

*United States v. Werle*, 815 F.3d 614 (9th Cir. 2016)...................................................... 6, 12, 13

*United States v. Wright*, 215 F.3d 1020  (9th Cir. 2000) .................................................. 7, 8, 9, 11

*Welch v. United States*, 136 S. Ct. 1257 (2016)............................................................... 18, 19

**Federal Statutes**

18 United States Code Section 2 ........................................................................................... 1, 15

18 United States Code Section 16 ......................................................................................... 4, 5, 17

18 United States Code Section 924 ....................................................................................... *passim*

18 United States Code Section 2113 ..................................................................................... *passim*

28 United States Code Section 2255 ..................................................................................... *passim*

**United States Sentencing Guidelines**

United States Sentencing Guidelines Section 2K2.1 ............................................................ 19

United States Sentencing Guidelines Section 2L1.2............................................................. 9

United States Sentencing Guidelines Section 4B1.2 ............................................................ *passim*

**State Cases**

*People v. Anderson*, 51 Cal. 4th 989 (2011) ........................................................................ 10

**State Statutes**

California Penal Code Section 211 ........................................................................................ 10, 11

California Penal Code Section 245 ........................................................................................ 9, 17

Washington Revised Code Section 9A84.101 ...................................................................... 12

**Other Authorities**

CNN, "Baltimore police: Officers 'compelled' to chase 13-year-old with BB gun"
    (Apr. 28, 2016), available at
    http://www.cnn.com/2016/04/28/us/baltimore-13-year-old-shot/ ........................................... 14

HEATHER E. WILLIAMS, #122664
Federal Defender
CAROLYN M. WIGGIN, # 182732
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: 916-498-5700
Carolyn_Wiggin@fd.org

Attorney for Defendant-Movant
JAVARIS MARQUEZ TUBBS

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.  2:05-cr-00243-WBS-CKD |
| ) | |
| Plaintiff-Respondent, ) | MOTION TO VACATE, SET ASIDE, OR |
| ) | CORRECT SENTENCE UNDER 28 U.S.C. |
| vs. ) | SECTION 2255 |
| ) | |
| JAVARIS MARQUEZ TUBBS, ) | |
| ) | Judge: Hon. William B. Shubb |
| Defendant-Movant. ) | |
| ) | |
| _____ ) | |

**I.    Introduction**

Pursuant to 28 U.S.C. § 2255, Defendant-Movant Javaris Marquez Tubbs respectfully

moves this Court to vacate and correct his sentence, which was increased because Mr. Tubbs was

unlawfully convicted of violating 18 U.S.C. § 924(c).  The offense that formed the basis for Mr.

Tubbs' conviction under 18 U.S.C. § 924(c) is no longer "crimes of violence" following *Johnson*

*v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson II*").

**II.    Statement of Facts**

On December 22, 2005, the government filed an indictment charging Mr. Tubbs as

follows:

Count One: Armed Bank Robbery, Aiding and Abetting, in violation of 18 U.S.C. §§

2113(a), (d), and 18 U.S.C. § 2; and

Count Two: use and carrying of a firearm during a crime of violence (the bank robbery

1

charged in Count One) in violation of 18 U.S.C. § 924(c).

Clerk's Record ("CR") 24.

Mr. Tubbs, as well as his co-defendant Michael Wayne Blanche, entered pleas of not guilty and went to trial.  Mr. Tubbs claims that:

> [P]rosecution improperly suggested that the uncharged prior crime (gun possession) was used in a prior bank robbery which prejudiced me in the eyes of the jury and violated the limiting order.  The misconduct was that prosecution argued that I had committed a prior bank robbery.
> [P]rosecution's closing arguments contained prejudicial misstatements of material evidence by inferring that my acceptance letter to the court was coerced by my counsel in order to receive a lesser sentence which was improper and which counsel objected to and asked for a mistrial.

Pro Se Section 2255 Petition, CR 169, p. 12.[1]

Both Mr. Tubbs and Mr. Blanche were convicted of both counts.  CR 86 and 87.  An Advisory Presentence Investigation Report was prepared as to Mr. Tubbs.  As to Count One, the Armed Bank Robbery, Aiding and Abetting charge, it calculated an offense level of 23 and a Criminal History Category of VI.  PSR p. 17.  This led to an advisory Guideline range of 92-115 months.  As to Count Two, the Section 924(c) count, it observed that a consecutive term of seven years (84 months) was required.  PSR p. 6.  On April 7, 2009, this Court sentenced Mr. Tubbs to 108 months on Count One and 84 months on Count Two to be served consecutively for a total term of 192 months.  CR 154, p. 6.

In the meantime, on June 7, 2007, Mr. Tubbs was charged in a superseding indictment with two counts of armed bank robbery in *United States v. Javaris Marquez Tubbs*, 2:06-cr-00451-WBS-3.  *See United States v. Tubbs*, 2:06-cr-00451-WBS-3, CR 38.  On March 27, 2009 Mr. Tubbs entered pleas of guilty to both counts pursuant to a written plea agreement.  *United States v. Tubbs*, 2:06-cr-00451-WBS-3, CR 168.  The plea agreement provided that in the present case (*United States v. Tubbs*, 2:05-cr-00243-WBS-CKD), Mr. Tubbs waived his right to appeal or collaterally attack the judgment "except as to defendant's conviction for Count Two charging a violation of 18 U.S.C. § 924(c)(1) which the defendant specifically reserves the right to appeal

---

[1] Undersigned counsel has not yet had an opportunity to review the trial transcript and independently review what was said by the prosecutor during trial.

the sufficiency of the evidence of his conviction by jury trial." *United States v. Tubbs*, 2:06-cr-00451-WBS-3, CR 169, p. 9.  With respect to this plea agreement, Mr. Tubbs claims that,

> Counsel came aboard post-trial for the plea bargain process and never familiarized himself with the intrinsics of the case in order to adequately provide me with professional advice with respect to such negotiations.  Counsel never actually communicated nor explained the terms of the plea offer and all that sufficiency of evidence entails and gave me inaccurate advice as to whether to accept such offer that led me to enter into a plea agreement unintelligently that limited the issues I could raise on appeal concerning Section 924(c) which was the reason I preserved my appeal rights from trial.

Pro Se Section 2255 Petition, CR 169, p. 4.[2]

After the entry of judgment in the present case ((*United States v. Tubbs*, 2:05-cr-00243-WBS-CKD), Mr. Tubbs appealed.  *See United States v. Javaris Marquez Tubbs*, Ninth Circuit Case No. 09-10149.  On December 23, 2011, the Ninth Circuit issued a Memorandum Disposition affirming the conviction.  CR 163.

On December 10, 2012, Mr. Tubbs filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.  Mr. Tubbs now files this First Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.

**III.    Claim One: Mr. Tubbs' Conviction under 18 U.S.C. § 924(c) Must Be Vacated in Light of Johnson II.**

   **A.   *Johnson II* Renders the Residual Clause in the Definitions of "Crime of Violence" Found in 18 U.S.C. Section 924(c)(3) Void for Vagueness.**

In *Johnson II*, the Supreme Court declared the residual clause of the Armed Career Criminal Act, or "ACCA," (18 U.S.C. § 924(e)(2)(B)(ii)) to be "unconstitutionally vague" because the "indeterminancy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges."  *Johnson II*, 135 S. Ct. at 2557.  Thus, "[i]ncreasing a defendant's sentence under the clause denies due process of law."  *Id*.  The Court held the residual clause "vague in all its applications," *id*. at 2561, and overruled its contrary decisions in *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 131 S. Ct. 2267 (2011).

---

[2] Undersigned counsel has not yet had an opportunity to investigate this claim.

3

1    Section 924(c) sets out mandatory minimum sentences for defendants who use or carry a

2    firearm "during and in relation to any crime of violence or drug trafficking crime," or who

3    possesses a firearm "in furtherance of any such crime."  18 U.S.C. § 924(c)(1)(a).  A "crime of

4    violence" is defined as a felony offense that either:

5         (A) has as an element the use, attempted use, or threatened use of physical
          force against the person or property of another, or

6

7         (B) *that by its nature, involves a substantial risk that physical force*
          *against the person or property of another may be used in the course of committing*
          *the offense.*

8

9    18 U.S.C. § 924(c)(3) (emphasis added).

10   *Johnson II's* holding that the ACCA's residual clause is unconstitutionally vague applies

11   equally to the residual clause in § 924(c)(3)(B).  The ACCA's definition of "violent felony" is

12   materially indistinguishable from § 924(c)(3)(B)'s definition of "crime of violence," and each

13   statute's residual clause requires the same unmanageable and indeterminable analysis that

14   compelled the *Johnson II* Court to hold that the ACCA's residual clause was unconstitutionally

15   vague.  In the Ninth Circuit, courts apply § 924(c)'s residual clause using the categorical

16   approach—the same framework that applies to the matching residual clause in 18 U.S.C. § 16(b),

17   as well as the ACCA's residual clause.  *See United States v. Amparo*, 68 F.3d 1222, 1225-26 (9th

18   Cir. 1995) (addressing § 924(c)); *James*, 550 U.S. at 208 (addressing the ACCA); *Rodriguez-*

19   *Castellon v. Holder*, 733 F.3d 847, 853-54 (9th Cir. 2013) (addressing § 16).  Likewise, the

20   *James* "ordinary case" test was used to analyze prior convictions under the residual clause in §

21   16(b)—again, a residual clause that is the same as that in § 924(c).  *See*, *e.g.*, *Rodriguez-*

22   *Castellon*, 733 F.3d at 854 (internal citations omitted) ("In determining whether a particular state

23   crime presents a substantial risk of physical force for purposes of § 16(b), we must determine

24   'whether the conduct covered by the crime presents the requisite risk of injury in the ordinary

25   case.'").  Because § 16(b)'s residual clause requires the same indeterminable, ordinary-case

26   analysis that was struck down in *Johnson II*, the reasoning invalidating that residual clause

27   applies with equal force to the essentially identical residual clause in § 924(c)(3)(B).

28   Indeed, because § 924(c)(3)(B) and § 16(b) are the same, the Ninth Circuit's decision in

4

*Dimaya v. Lynch* controls this case.  *See Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015).  In

*Dimaya*, the Ninth Circuit held that § 16(b), as incorporated into the Immigration and Nationality

Act's definition of a "crime of violence," is unconstitutionally vague under *Johnson II*.  *Id*. at

1120.  *Dimaya* noted that the ACCA's residual clause and § 16(b) were not identical, but

highlighted that both "are subject to the same mode of analysis," the categorical approach, such

that "courts considering both § 16(b) and the residual clause [of the ACCA] must decide what a

'usual or ordinary violation' of the statute entails and then determine how great a risk of injury

that 'ordinary case' presents."  *Id*. at 1114-15 (*quoting Rodriguez–Castellon*, 733 F.3d at 854;

*United States v. Ramos–Medina*, 706 F.3d 932, 938 (9th Cir. 2013).  The court examined § 16(b)

with respect to each of the two constitutionally deficient inquiries described in *Johnson II* and

concluded that *Johnson II's* reasoning applied to § 16(b) with equal force.  *See Dimaya*, 803 F.3d

at 1116 ("As with the residual clause, the INA's definition of a crime of violence at issue in this

case offers 'no reliable way to choose between these competing accounts' of what a crime looks

like in the ordinary case.") (quoting *Johnson II*, 135 S. Ct. at 2558); *id*. at 1117 ("Section 16(b)

gives judges no more guidance than does the ACCA provision as to what constitutes a

substantial enough risk of force to satisfy the statute.").  The court concluded that "[t]ogether,

under *Johnson*, these uncertainties render the INA provision unconstitutionally vague."  *Id*. at

1120.

      As district courts in this circuit have recognized, the analysis in *Dimaya* is entirely

applicable to § 924(c)(3)(B) because the language of both residual clauses is essentially identical,

and each requires the same "ordinary case" categorical analysis that *Johnson II* squarely rejected.

*See United States v. Thongsouk Theng Lattanaphom*, No. CR 2:99-00433 WBS, 2016 WL

393545, at *4-5 (E.D. Cal. Feb. 2, 2016) (holding residual clause in 924(c)(3)(B)

unconstitutionally vague in light of *Johnson II* and *Dimaya*); *United States v. Bell*, No. 15-CR-

00258-WHO, 2016 WL 344749, at *12 (N.D. Cal. Jan. 28, 2016) ("the section 924(c)(3) residual

clause cannot stand under *Johnson II*.").  Therefore, § 924(c)(3)(B) can no longer support a

determination that an offense constitutes a "crime of violence."

**B.   In Light of *Johnson II*, Federal Armed Bank Robbery Fails to Qualify as a Crime of Violence Under 18 U.S.C. Section 924(c)(3).**

As argued above, federal armed bank robbery cannot qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3)(B)'s residual clause because that clause is void for vagueness under *Johnson II*.  Section 924(c)(3) does not contain a list of enumerated offenses, so federal bank robbery cannot qualify as a crime of violence under an enumerated offense clause.  The only remaining way for federal armed bank robbery to qualify as a crime of violence under 18 U.S.C. § 924(c)(3)(A): a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  As argued below, federal armed bank robbery does not fulfill this "elements" clause, and thus Mr. Tubbs' 924(c) conviction and sentence must be vacated.

**1.   To Decide Whether an Offense is a "Crime of Violence," Under the Elements Clause, this Court Must Employ the Categorical Approach.**

To qualify as a crime of violence under the "elements" or "force" clause, an offense must have "as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  In determining whether an offense is a "crime of violence" under the elements clause, courts employ the categorical approach.  *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *United States v. Parnell*, 818 F.3d 974 (9th Cir. 2016).  This approach requires that courts "look only to the statutory definitions—*i.e.*, the elements—of a defendant's [offense] and not to the particular facts underlying [the offense.]" *Descamps*, 133 S. Ct. at 2283 (internal quotation marks and citation omitted).  A court begins the analysis by determining "the least of the acts criminalized under the elements of the state statute." *United States v. Werle*, 815 F.3d 614, 623 (9th Cir. 2016).  The statute can only be a crime of violence if those acts necessarily include "as an element the use, attempted use, or threatened use of physical force against the person of another." *See* U.S.S.G. § 4B1.2(a)(1); *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013); *Werle*, 815 F.3d at 618-19.  Moreover, "physical force" means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original)

6

("*Johnson I*").

Even if such force is present, the offense still is not a crime of violence unless the force was applied intentionally.  *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004); *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006) (*en banc*) ("The bedrock principle of *Leocal* is that to constitute a federal crime of violence an offense must involve the intentional use of force . . . .").  Thus, an offense that does not necessarily require the *intentional* use, attempted use, or threatened use of *violent* physical force does not meet the elements clause.  *See United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) (holding that California robbery does not have as an element the use attempted use, or threatened use of force because it can be accomplished using unintentional force).

Mr. Tubbs' conviction for aiding and abetting armed bank robbery is not a crime of violence because it does not necessarily include this level of force and does not require the intentional use of force.  Therefore, Count Two has no crime-of-violence predicate to stand on and it must be vacated.  Prior Ninth Circuit case law labeling federal bank robbery a crime of violence is no longer valid or binding, because its method of categorical analysis was abrogated by the Supreme Court and *en banc* Ninth Circuit.

## 2. *Johnson II* Invalidated Prior Ninth Circuit Case Law.

Federal bank robbery is defined in 18 U.S.C. § 2113(a), as taking or attempting to take "by force and violence, or by intimidation . . . from the person or presence of another . . . any property or money or any other thing of value belonging to [a bank.]"  Subsection (d) increases the penalty if the defendant "put[] in jeopardy the life of any person by the use of a dangerous weapon or device" during the course of the robbery.  18 U.S.C. § 2113(d).  "Armed" bank robbery is therefore defined by section 2113(a), with the added element that the defendant "put in danger the life of any person by the use of a dangerous weapon."  *United States v. Wright*, 215 F.3d 1020, 1028  (9th Cir. 2000).

The Ninth Circuit last considered whether bank robbery is a crime of violence over 25 years ago, in *United States v. Selfa*, 918 F.2d 749 (9th Cir. 1990).  There, the court devoted only two sentences to analyzing whether section 2113(a) is a crime of violence:  The court first

defined "intimidation" as "wilfully to take, or attempt to take, in such a way that would put an ordinary, reasonable person in fear of bodily harm." *Id.* at 751 (quoting *United States v. Hopkins*, 703 F.2d 1102, 1103 (9th Cir. 1983)).  The opinion next stated, "[This ] definition is sufficient to meet the [crime of violence] requirement of a 'threatened use of physical force.'" *Id.* (citing *United States v. Maddalena*, 893 F.2d 815, 819 (6th Cir. 1989)).  The court applied the same conclusion in a case involving armed bank robbery.  *See Wright*, 215 F.3d at 1028 ("18 U.S.C. § 924(c)(3) defines a crime of violence for purposes of § 924(c) as a felony that 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'  Armed bank robbery qualifies as a crime of violence because one of the elements of the offense is a taking 'by force and violence, or by intimidation.' 18 U.S.C. § 2113(a).").

*Selfa* and *Wright* are irreconcilable with developments in Supreme Court and Ninth Circuit *en banc* case law delineating the analysis courts must use to apply the categorical rule. *See Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (*en banc*) (holding that district courts are not bound by prior Ninth Circuit authority if subsequent Supreme Court or *en banc* Ninth Circuit authority "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").  Specifically, two aspects of the categorical rule jurisprudence have "undercut the theory or reasoning underlying" *Selfa* and *Wright*.

First, in *Moncrieffe v. Holder*, the Supreme Court held that a court must begin the categorical analysis by determining the "minimum conduct criminalized" by the predicate statute.  133 S. Ct. at 1684 ("Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense.") (alterations in original) (*quoting Johnson v. United States*, 559 U.S. 133, 137 (2010)).  Second, an *en banc* panel of the Ninth Circuit has indicated that a court must look to judicial interpretations defining this minimum conduct.  *See Almanza-Arenas v. Lynch*, 815 F.3d 469, 479-81 (9th Cir. 2016) (*en banc*) (discussing a circuit split about whether courts must look to judicial interpretations in determining the elements of a

predicate offense, and concluding that examination of judicial interpretations is integral because "'we simply are not at liberty to ignore [California courts' interpretation of a California statute]'") (quoting *Schad v. Arizona*, 501 U.S. 624, 636 (1991) (plurality opinion)); *see also United States v. Grajeda*, 581 F.3d 1186, 1191 (9th Cir. 2009) ("On its face, [California Penal Code] section 245(a)(1) would thus qualify as a crime of violence under the element prong of [U.S. Sentencing Guideline] § 2L1.2.  However, 'in determining the categorical reach of a state crime, we consider not only the language of the state statute, but also the interpretation of that language in judicial opinions.'") (quoting *Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1016 (9th Cir. 2006)).

*Selfa* and *Wright's* reasoning is irreconcilable with *Moncrieffe* and *Almanza-Arenas*, because the *Selfa* and *Wright* courts never conducted this required analysis.  *Selfa* and *Wright* did not consider what "minimum conduct" could comprise "intimidation."  Instead, the *Selfa* court simply recited the definition of "intimidation," and summarily concluded—in the very next sentence—that the definition was "sufficient to meet" the force clause.  *See* 918 F.2d at 751.  The *Wright* court, for its part, engaged in no analysis.  *See* 215 F.3d at 1028.  Because they did not consider the minimum conduct, these courts also did not examine examples of case law interpreting it.  The analysis set out in *Moncrieffe* and *Almanza-Arenas*—that *Selfa* and *Wright* failed to follow—is integral to analyzing the force clause.  *Cf. Parnell*, 818 F.3d at 981 (declining to follow a First Circuit case directly on point as to whether a Massachusetts statute falls under the force clause, because "[that] court's discussion of the *Johnson* issue consists of only a single sentence, provides no reasoning and makes no mention of the Massachusetts case law deeming the degree of force immaterial to a conviction for armed robbery").  In such a situation, this "district court[] should consider [it]sel[f] bound by the intervening higher authority [of *Moncrieffe* and *Almanza-Arenas*] and reject the prior opinion[s] of [the Ninth Circuit.]" *Garcia v. Wells Fargo Bank*, N.A., 990 F. Supp. 2d 1028, 1033 (C.D. Cal. 2014) (citations and internal quotation marks omitted; final alteration in original).

Conducting the proper categorical analysis under *Moncrieffe* and *Almanza-Arenas* compels the conclusion that armed bank robbery is not a crime of violence under the force

clause, and in light of *Johnson II*, it is not a crime of violence under any clause.  This conclusion

follows from the evolution in analysis of a similar statute over the past 25 years: California

robbery under Penal Code § 211.  Back in 1990, the Ninth Circuit addressed whether California

robbery was a crime of violence in *United States v. McDougherty*, 920 F.2d 569 (9th Cir. 1990).

The *McDougherty* defendant raised the argument that his California robbery conviction was not

a crime of violence "because it would be possible to commit the offense without the use of

physical force."  *Id*. at 573.  In response to that argument, the court appeared at least unsure

about whether section 211 met the elements test: the court first emphasized that both "physical

force" and "[t]hreatening to use physical force" could "meet[] the definition of crime of

violence[.]"  *Id*. at 574.  But, "[m]ore importantly," the substantial risk of physical force was

sufficient—per the residual clause.  *Id*.  "Clearly then," the court held, "robbery as defined in

California falls under [the residual clause ]."  *Id*.

California robbery remained a crime of violence until *Johnson II*.  The Ninth Circuit

confirmed as much in *United States v. Dixon*, 805 F.3d 1193 (9th Cir. 2015), when the court

returned to the issue of whether California robbery is a "violent felony."   Similar to

*McDougherty*, the Court addressed the argument that it was possible to commit the offense

without the requisite force.  *Id*. at 1197-98.  Beginning with the law underpinning the force

clause, the *Dixon* court identified "two [] requirements": first, that "physical force" "must be

'violent force,'" *id*. at 1197 (quoting *Johnson I*, 559 U.S. at 140), and second, that "the use of

force must be intentional, not just reckless or negligent[,]" *id*. (citing *United States v. Lawrence*,

627 F.3d 1281, 1284 (9th Cir. 2010); *Leocal*, 543 U.S. at 12-13).  The court then followed the

procedure laid out by *Moncrieffe* and *Almanza-Arenas*: it articulated the least of the criminalized

conduct by assessing the lowest possible mental state which could meet the statutory elements of

the crime of robbery.  See *id*. at 1197-98.  It did so by not only reciting the definitions of

statutory terms, but also by examining California case law.  See *id*.  That case law showed that

"one may violate [section] 211 by accidentally using force."  *Id*. .  (describing the facts and

holding of *People v. Anderson*, 51 Cal. 4th 989 (2011), in which a defendant accidentally ran

over a person while intentionally stealing her car).  Because *People v. Anderson* showed that

1  intentional violent force was not necessary for the state to convict, California robbery "fail[ed]

2  the elements test[.]"  *Id.* .

3       But this time—unlike in 1990 when the court decided *McDougherty*—the residual clause

4  is invalid.  With no residual clause to fall back on, the *Dixon* Court was compelled to hold that "a

5  violation of [California Penal Code] § 211 is not categorically a 'violent felony[.]'"  *Id.* .

6       As explained more fully below, the same analysis applies to section 2113(a) and (d).  In

7  fact, the *McDougherty* court analogized Penal Code § 211 to the federal bank robbery statute at

8  issue here.  *See* 920 F.2d at 573.  The court observed that the *McDougherty* defendant's

9  argument (that "it would be possible to commit the offense without the use of physical force")

10  could also be made to challenge federal bank robbery.  *Id.* ("This same argument could be made

11  about 18 U.S.C. § 2113(a), which this circuit has already declared to be a crime of violence in

12  *Selfa*.").  *Selfa* and *Wright* however failed to address the argument.

13       Before *Johnson II*, this failure was of no matter.  That is, whether or not section 2113 fell

14  under the elements clause, it was still a crime of violence; "clearly," bank robbery would fall

15  under the residual clause, just as § 211 had in *McDougherty*.  In other words, the residual clause

16  saved *Selfa* and *Wright*.  But after *Johnson II*, there is no residual clause to fall back on, so *Selfa*

17  and *Wright's* erroneous holdings can now be challenged for the first time.

18       This Court should follow *Dixon* to conclude that in light of *Johnson II*, armed bank

19  robbery does not meet the elements clause and is not a crime of violence.  The Ninth Circuit has

20  not addressed this issue in a published post-*Johnson II* opinion, but the court has indicated that

21  the issue is open.  *See Park v. United States*, No. 16-35283, slip op. at 1 (9th Cir. June 13, 2016)

22  (granting certificate of appealability as to whether federal armed bank robbery convictions

23  qualify as ACCA predicates).  Like California robbery, section 2113 does not require intentional

24  force or threats.  *See Leocal*, 543 U.S. at 12-13; *Dixon*, 805 F.3d at 1197.  Additionally, it does

25  not require violent force or threats.  See *Johnson I*, 559 U.S. at 140.

26            **3.  Federal Bank Robbery Does Not Require Intentional Force.**

27       In order for an offense to qualify as a crime of violence, an offense must have as an

28  element an intentional use or threat of physical force.  *Leocal*, 543 U.S. at 9-10; *Fernandez-Ruiz*,

466 F.3d at 1132.  Federal bank robbery does not contain such a requirement.  Specifically, a defendant may be convicted of bank robbery by "intimidation," even absent any proof that he intended to intimidate the victim.  Indeed, the Ninth Circuit has expressly held that a defendant's intent to intimidate is not an element of bank robbery.  See *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993) (holding that defendant was not entitled to jury instruction requiring proof of his specific intent to intimidate the bank teller; "Whether [the defendant] specifically intended to intimidate [the teller] is irrelevant.").

Instead of requiring proof that the defendant intended to intimidate or threaten someone, the "determination of whether there has been an intimidation should be guided by an objective test focusing on the accused's actions."  *Id*.  For example, in *United States v. Ketchum*, 550 F.3d 363, 365 (4th Cir. 2008), the defendant handed a bank teller a note that read, "These people are making me do this."  He also told the teller, "They are forcing me and have a gun.  Please don't call the cops.  I must have at least $500."  *Id*.  Once the teller gave him money and returned the note, the defendant left the bank without incident.  *Id*.  The court found these facts sufficient to convict, in part because "[t]he intimidation element of § 2113(a) is satisfied if an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts, whether or not the defendant actually intended the intimidation."  *Id*. at 367 (citation and quotation marks omitted; emphasis added).  The court did not consider whether the defendant actually intended his words to be a threat to the teller, because such an inquiry is "irrelevant."  *Foppe*, 993 F.2d at 1451.  Lacking such intent, bank robbery falls short of the force clause.

The *Ketchum* defendant was convicted of bank robbery under section 2113(a) without the enhancement of subsection (d), but the additional element of having a weapon does not change the analysis.  To begin, the fact that a person is armed does not automatically create a threat of force.  The Ninth Circuit specifically rejected that argument in *United States v. Werle*.  In that case, the court analyzed a Washington statute that proscribed "knowingly and unlawfully us[ing] or threaten[ing] to use force, or in any way participat[ing] in the use of such force, against any other person or against property."  *Werle*, 815 F.3d at 620  (quoting Wash. Rev. Code § 9A84.101)).  The court considered the least of the acts criminalized by the statute, namely the

1    "minimal amount of force" that could sustain a conviction.  *Id*. at 620, 623.  Looking beyond the

2    bare language of the statute, the court examined state court interpretations and concluded that the

3    statute "d[id] not require [violent physical force] as a necessary element of the offense."  *Id*.  at

4    621.  The government in *Werle* argued that the crime was nonetheless a violent felony, because

5    "it require[d] that the defendant was an 'actor' armed with a deadly weapon."  *Id*.  The court

6    disagreed, stating that "being armed with a deadly weapon" is not synonymous with "actually

7    using or threatening to use that weapon."  *Id*. at 622.

8          Moreover, despite section 2113(d)'s reference to "put[ting] in jeopardy the life of any

9    person[,]" the Ninth Circuit has construed this subsection so broadly that it encompasses

10   situations where the danger is posed by something other than the weapon or the person wielding

11   it.  For example, in *United States v. Martinez-Jimenez*, the Ninth Circuit held that a person may

12   be convicted under subsection (d) for carrying a plastic, completely inoperable toy gun.  *United

13   States v. Martinez-Jimenez*, 864 F.2d 664, 667 (9th Cir. 1989) ("The trial court found that the

14   replica was a 'totally plastic and extremely light' toy gun").  The defendant had not threatened

15   anyone with the toy and instead "had held it downward by his side and not towards any of the

16   bank employees or customers."  Id.  He testified that he carried the toy with him because he "felt

17   secure with it[.]"  *Id*.

18         Despite both the inability to use such a toy as a weapon, and the lack of any indication

19   that the defendant threatened or committed any actual violence, the *Martinez-Jimenez* court

20   upheld the conviction.  See *id*.  The court reasoned that a "dangerous weapon" in section 2113(d)

21   need not be defined by "its potential to injure people directly."  *Id*. at 666.  Rather, the danger of

22   injury from a toy gun results from the risk of a violent response by others.  See *id*. at 667 ("[T]he

23   robber who carries a toy gun] creates a likelihood that the reasonable response of police and

24   guards will include the use of deadly force.  The increased chance of an armed response creates a

25   greater risk to the physical security of victims, bystanders, and even the perpetrators.  Therefore

26   the greater harm that a robber creates by deciding to carry a toy gun is similar to the harm that he

27   creates by deciding to carry an unloaded gun.").

28         This potential risk of violence by others, as described in *Martinez-Jimenez*, was sufficient

to trigger the residual clause.  But it is insufficient for the elements clause.  *Cf. Parnell*, 818 F.3d at 980 ("There is a material difference between the presence of a weapon, which produces a risk of violent force, and the actual or threatened use of such force.  Only the latter falls within ACCA's force clause.  Offenses presenting only a risk of violence fall within ACCA's residual clause, [which is now void].") (emphasis in original).

*Ketchum* and *Martinez-Jimenez* "show[] that one can realistically violate" section 2113(a) and (d) without an intent to threaten violent force against another.  See *Dixon*, 805 F.3d at 1197-98.  This statute therefore fails the elements clause.  See *id*.

### 4.  Federal Bank Robbery Does Not Require Violent Force.

Section 2113 also fails the elements clause in another way: it does not require use or threatened use of violent physical force.  That is, the Ninth Circuit focuses the inquiry on whether the outward appearance of defendant's actions would put a "reasonable person" in fear of bodily harm.  *Foppe*, 993 F.2d at 1451; *Selfa*, 918 F.2d at 751 (citing *Hopkins*, 703 F.2d at 1103).  Importantly, there is no requirement that a defendant threaten actual physical force.  Indeed, circumstances sufficient to intimidate someone need not involve such a threat.

*Martinez-Jimenez* again provides an illustration.  In that case, the defendant "ordered that people in the bank 'lie face down on the floor.'"  864 F.2d at 665.  He held an object "that eyewitnesses thought was a handgun" but that was actually a "'totally plastic and extremely light' toy gun[.]"  *Id*. at 665, 667.  At all times, he held it down, against his leg.  *Id*. at 667.

The court upheld the conviction under section 2113(d) in spite of the fact that the defendant could not inflict any injury with this "extremely light" toy.  The case shows that a conviction may stand even in the absence of actual physical force or a threat of actual physical force.  The "risk," *id*., that others will use actual force in response to seeing a fake weapon is all too real.  See, e.g., CNN, "Baltimore police: Officers 'compelled' to chase 13-year-old with BB gun" (Apr. 28, 2016), available at http://www.cnn.com/2016/04/28/us/baltimore-13-year-old-shot/.  But such a risk does not bring section 2113(d) within "the category of violent, active crimes" that the force clause contains.  See *United States v. Melchor-Meceno*, 620 F.3d 1180, 1183 (9th Cir. 2010) (citation omitted).

### 5.  An Aider and Abettor Need Not Intend the Use of Violent Force.

Even if this Court determined that federal armed bank robbery remains a "crime of violence," Mr. Tubbs was not convicted of a crime of violence for one further reason: the force clause does not encompass aiding and abetting liability.  A defendant "can be convicted as an aider and abettor [under 18 U.S.C. § 2] without proof that he participated in each and every element of the offense." *Rosemond v. United States*, 134 S. Ct. 1240, 1246 (2014).  Indeed, "[t]he quantity of assistance [is] immaterial, so long as the accomplice did something to aid the crime." *Id.* (internal quotation marks and citation omitted; emphasis in original).  An aider and abettor does not have to personally use, attempt to use, or threaten violent physical force to be convicted of aiding and abetting a federal armed bank robbery.

Importantly, an aider and abettor of bank robbery need not intend that the principal threatens or inflicts violent physical force—even where such force is in fact used or threatened by the principal.  For example, an aider and abettor could drive a bank robber (the principal) to a bank, knowing that the robber carries a toy gun.  He thus knows the "extent and character" of the crime and can be found guilty of aiding and abetting federal armed bank robbery. *United States v. Easter*, 66 F.3d 1018, 1024 (9th Cir. 1995).   But if the principal, during the course of the robbery, punches the teller, she has used physical force.  In this situation, the aider and abettor can be convicted of armed bank robbery, even though the aider and abettor did not intend the use of violent physical force.  The aider and abettor may have been criminally reckless as to whether force would be used in this situation, but he did not necessarily intend it. *See Fernandez-Ruiz*, 466 F.3d at 1132 (holding that recklessness and gross negligence are insufficient for a crime of violence).  Therefore, because the aider and abettor need not have acted with the requisite intent, liability under 18 U.S.C. § 2 does not come within the force clause. *See Dixon*, 805 F.3d at 1197.

Aiding and abetting a firearm offense used to be a crime of violence, but only because of the residual clause.  The Supreme Court case *James v. United  States* supports that conclusion. *James* interpreted the "crime of violence" provision of the Sentencing Guidelines.  See 550 U.S. at 206 overruled on other grounds by Johnson II, 135 S. Ct. 2551.  The Sentencing Guidelines'

definition included both an elements clause and a residual clause, like § 924(c).  See United States Sentencing Guideline ("U.S.S.G.") § 4B1.2(a).  The force clause of section 4B1.2(a)(1) defined a crime of violence almost identically  to 18 U.S.C. § 924(c), as an offense that "has as an element the use, attempted use, or threatened use of physical force[.]"  U.S.S.G. § 4B1.2(a)(1).  The Sentencing Commission's commentary to that guideline section stated, "'Crime of violence' . . . includes the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."  U.S.S.G. § 4B1.2 cmt. n.1.

In *James*, the Supreme Court clarified that the Commission included aiding and abetting, conspiracy, and attempt "based on the Commission's review of empirical sentencing data and presumably reflects an assessment that attempt crimes often pose a similar risk of injury as completed offenses."  550 U.S. at 206 (observing that the Commission is in the best position to "make an informed judgment about the relation between a particular offense and the likelihood of accompanying violence.") (internal quotation marks and citations omitted).  An offense that causes a "risk" of violence is not the same as the one that includes violent force as an element. *Parnell*, 818 F.3d at 980 ("There is a material difference between the presence of a weapon, which produces a risk of violent force, and the actual or threatened use of such force.") (emphasis in original).  Only the latter falls within the force clause; offenses presenting a "risk" of violence fall within the now-void residual clause.  *Id*.  Indeed, courts have held that "conspiracy" to commit a crime of violence—another of the inchoate crimes  included in the Commission's commentary—fell under the residual clause and is not a crime of violence after *Johnson II.  See United States v. Baires-Reyes*, 3:15-cr-00122-EMC-2 (N.D. Cal. June 7, 2016); *United States v. Smith*, No. 2:11-cr-00058-JAD-CWH, 2016 WL 2901661, at *5 (D. Nev. May 18, 2016); *United States v. Luong*, No. 2:99-cr-00433-WBS (E.D. Cal. Apr. 20, 2016).

The conclusion that aiding and abetting armed offenses fell under the residual clause is confirmed by another Supreme Court case, *Rosemond v. United States*, decided in 2014.  That case considered the *mens rea* requirement of aiding and abetting liability as to a violation of 18 U.S.C. § 924(c)(1)(A).  See 134 S. Ct. at 1234.  The Court spoke repeatedly of the "risks," "danger," and "perilous stakes" of assisting in a crime, knowing that the principal be armed.  *See*

16

1  id. at 1248, 1250, 1251; *id*. at 1253, 1254, 1256 (Alito, J., concurring in part and dissenting in

2  part); *e.g.*, *id*. at 1251 (majority opinion) (considering the "risk of gun violence—to the

3  accomplice himself, other participants, or bystanders" and "the best or only way to avoid that

4  danger").  Again, such concerns fell under the residual clause.  See 18 U.S.C. § 924(c)(3)(B)

5  (describing offenses that "by [their] very nature, involve[] a substantial risk that physical force

6  against the person or property of another may be used in the course of committing the offense").

7  Now that the residual clause is void, aiding and abetting an armed offense such as armed bank

8  robbery is no longer a crime of violence.

9  Mr. Tubbs acknowledges that in *Ortiz-Magana v. Mukasey*, 542 F.3d 653 (9th Cir. 2008),

10  the Ninth Circuit held that aiding and abetting a "crime of violence," assault with a deadly

11  weapon under California Penal Code Section 245(a)(1), is a crime of violence for purposes of .

12  18 U.S.C. § 16.  However, in *Ortiz-Magana*, the court observed that "California courts have

13  included aiding and abetting within the definition of assault with a deadly weapon under section

14  245(a)(1)."  *Ortiz-Magana*, 542 F.3d at 658.  The same is not true of federal armed bank robbery.

15  In addition, the *Ortiz-Magana* court determined that aiding and abetting California assault with a

16  deadly weapon required "the same specific intent" as commission of the crime.  *Id*.  By contrast,

17  while federal armed bank robbery requires proof of intent to use of force, violence, or

18  intimidation, to be guilty of aiding and abetting the same the government need only prove that

19  the defendant took an affirmative step in furtherance of the offense with the knowledge that

20  others planned to use force, violence, or intimidation to carry out the bank robbery.  *Compare*

21  *Rosemond*, 134 S. Ct. at 1249 ("an active participant in a drug transaction has the intent needed

22  to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a

23  gun.").  Finally, the Ninth Circuit has observed that *Ortiz-Magana* may be based on a holding

24  that aiding and abetting California assault with a deadly weapon falls within the residual clause

25  of  18 U.S.C. § 16(b), not the force/elements clause.  *Grajeda*, 581 F.3d  at 1196 n. 8.  For the

26  reasons set forth above, the residual clause is void for vagueness.

27  **C.  Mr. Tubbs' Claim is Cognizable under 28 U.S.C. Section 2255(a).**

28  A federal prisoner may move to "vacate, set aside or correct" his sentence if it "was

17

imposed in violation of the Constitution." 28 U.S.C. § 2255(a). Mr. Tubbs' sentence was imposed in violation of the Constitution because it was predicated on the residual clause. That is, the rationale for labeling California attempted robbery, federal unarmed bank robbery, and aiding and abetting federal armed bank robbery crimes of violence relied on the "risk" language of that now unconstitutionally vague residual clause. *See Johnson II*, 135 S. Ct. at 2560 ("Invoking so shapeless a provision to condemn someone to prison . . . does not comport with the Constitution's guarantee of due process."). Increasing Mr. Tubbs' sentence based on that clause violates the Constitution and thus, Ms. Tubbs' claim for relief is cognizable under § 2255(a).

The government may argue that Mr. Tubbs must additionally meet the "fundamental defect" standard, but he need not. That standard only applies to non-jurisdictional, non-constitutional errors. *See United States v. Addonizio*, 442 U.S. 178, 185 (1979) ("[U]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack [is limited to] error[s] [that] constitute[] a fundamental defect . . . .") (citations and internal quotation marks omitted). Mr. Tubbs' claim—a constitutional claim under *Johnson*—is cognizable. *See, e.g.*, Order at 2-3, *Brown v. United States*, No. 15-10025 (11th Cir. Sept. 2, 2015) (granting certificate of appealability because although a claim that a defendant was misclassified under the Guidelines "is generally not cognizable" under circuit law applicable to errors of statutory interpretation, "*Johnson* involved a claim of constitutional error").

**D. *Johnson II* Applies Retroactively on Collateral Review.**

The Supreme Court held in *Welch v. United States* that the new rule announced in *Johnson II* is substantive and thus retroactive to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016) ("*Johnson* is thus a substantive decision and so has retroactive effect under *Teague* in cases on collateral review."). *Welch*'s holding applies equally to cases interpreting the residual clause of U.S.S.C. § 4B1.2 and 18 U.S.C. § 924(c)(3) as it does to cases interpreting the identical residual clause of the ACCA. Indeed, the *Welch* Court said nothing whatsoever to limit its holding or reasoning to ACCA cases. Rather, *Welch*'s reasoning indicates that the "rule" of *Johnson*—that the language of the residual clause is unconstitutionally vague—is retroactively applicable to all cases in which it applies.

18

Retroactivity applies categorically.  *See Davis v. United States*, 564 U.S. 229, 243 (2011) (indicating that retroactivity is a "categorical matter").  "Category" refers to the "rule," not to the type of case.  *See Welch*, 136 S. Ct. at 1264 (explaining that two "categories" are retroactive: "new substantive *rules*" and "new watershed *rules* of criminal procedure") (internal citations and quotation marks omitted) (emphasis added); *Danforth v. Minnesota*, 552 U.S. 264, 266 (2008) ("New constitutional rules announced by [the Supreme] Court that [are substantive] must be applied in . . . all federal habeas corpus proceedings.").  Indeed, the Supreme Court has granted *certiorari* for purposes of vacating and remanding "in light of *Johnson*" in five cases involving collateral attack on sentences based on Guidelines "crimes of violence." *See Jones v. United States,* 136 S. Ct. 333 (2015); *Denson v. United States*, 135 S. Ct. 2931 (2015); *Beckles v. United States*, 135 S. Ct. 2928 (2015); *Wynn v. United States*, 135 S. Ct. 2945 (2015); *Jones v. United States*, 135 S. Ct. 2944 (2015).

The Ninth Circuit, which has not explicitly decided the issue, appears poised to confirm that *Johnson II* applies retroactively to all cases—including Guidelines and 924(c) cases like this one.  To do so, it need merely follow its precedent holding that other interpretations of the ACCA are retroactive to the Guidelines.  *See Reina-Rodriguez v. United States*, 655 F.3d 1182, 1189 (9th Cir. 2011) (holding that decision limiting the definition of burglary under the ACCA is substantive because "it altered the conduct that substantively qualifies as burglary," and thus applies retroactively in Guidelines cases).  Following *Reina-Rodriguez*, at least one district court in this circuit has applied *Johnson II*  retroactively on collateral review to the base offense level calculation of § 2K2.1.  *See United States v. Dean*, 2016 WL 1060229, at *16 (D. Or. Mar. 15, 2016) ("Following the Ninth Circuit's decision in *Reina–Rodriguez*, the Court finds that *Johnson* is a new, substantive rule . . . .  Accordingly, *Johnson* applies retroactively.").

**E.  This New Claim is Timely under 28 U.S.C. § 2255(f)(3).**

This motion is timely under 28 U.S.C. § 2255(f)(3), which provides for a one-year limitations period to run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

The Supreme Court decided *Johnson II* on June 26, 2015, and Mr. Tubbs filed his claim within a year of that date.  As discussed above, the Supreme Court recognized a new right in *Johnson II*, and announced a substantive rule that is therefore retroactive to cases on collateral review.

## IV.    Claim Two: Mr. Tubbs' Fifth Amendment Right to Due Process Was Violated by Prosecutorial Misconduct.

Mr. Tubbs claims that:

> [P]rosecution improperly suggested that the uncharged prior crime (gun possession) was used in a prior bank robbery which prejudiced me in the eyes of the jury and violated the limiting order.  The misconduct was that prosecution argued that I had committed a prior bank robbery.
> [P]rosecution's closing arguments contained prejudicial misstatements of material evidence by inferring that my acceptance letter to the court was coerced by my counsel in order to receive a lesser sentence which was improper and which counsel objected to and asked for a mistrial.

Pro Se Section 2255 Petition, CR 169, p. 12.[3]  Mr. Tubbs asserts that this amounted to prosecutorial misconduct in violation of his Fifth Amendment right to the due process of law. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (improper remarks by a prosecutor can "so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.").

## V.    Claim Three: Mr. Tubbs' Attorney Failed to Provide Him With Accurate Advice Regarding His Waiver of Appeal Pursuant to a Plea Agreement in a Related Case.

Mr. Tubbs claims that,

> Counsel came aboard post-trial for the plea bargain process and never familiarized himself with the intrinsics of the case in order to adequately provide me with professional advice with respect to such negotiations.  Counsel never actually communicated nor explained the terms of the plea offer and all that sufficiency of evidence entails and gave me inaccurate advice as to whether to accept such offer that led me to enter into a plea agreement unintelligently that limited the issues I could raise on appeal concerning Section 924(c) which was the reason I preserved my appeal rights from trial.

Pro Se Section 2255 Petition, CR 169, p. 4.[4]  Mr. Tubbs alleges that his Sixth Amendment right to the effective assistance of counsel was breached.  *McMann v. Richardson*, 397 U.S. 759, 770

---

[3] Undersigned counsel has not yet had an opportunity to review the trial transcript and independently review what was said by the prosecutor during trial.
[4] Undersigned counsel has not yet had an opportunity to investigate this claim.

(1970) (a defendant is entitled to the effective assistance of counsel with respect to entry of guilty plea).

**VI.      Conclusion**

      Mr. Tubbs is entitled to relief under § 2255 because, in light of *Johnson II*, his conviction under 18 U.S.C. § 924(c) violates due process of law.  This Court should vacate Count Two, vacate Mr. Tubbs' erroneously imposed sentence, and re-sentence him accordingly.  In addition, Mr. Tubbs challenges his conviction on the ground of prosecutorial misconduct at trial and argues that counsel provided him with incomplete advice regarding his plea agreement in *United States v. Tubbs*, 2:06-cr-00451-WBS-3 which limited his ability to raise issues on appeal from the conviction in this case.

Dated:  June 24, 2016

                                  HEATHER E. WILLIAMS
                                  Federal Defender

                                  */s/ Carolyn M. Wiggin*
                                  Carolyn Wiggin
                                  Assistant Federal Defender

                                  Attorneys for Defendant-Movant
                                  JAVARIS MARQUEZ TUBBS

1

**28 U.S.C. § 2242 CERTIFICATION**

2

Pursuant to 28 U.S.C. § 2242 and Rule Governing Section 2255 Proceedings 2(b)(5), I declare
under penalty of perjury under the laws of the State of California that the facts alleged in this
motion are true and correct to the best of my knowledge, and that this declaration was executed
on June 24, 2016, in Sacramento, California

3

4

5

/s/ Carolyn M. Wiggin
Carolyn Wiggin
Assistant Federal Defender

6

7

Attorney for Defendant-Movant
JAVARIS MARQUEZ TUBBS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28